FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Jul 30, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANNE T., | NO: 1:20-CV-3080-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 19, 22.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by Attorney D. James Tree.  Defendant is

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

represented by Special Assistant United States Attorney Ryan Lu.  The Court has

reviewed the administrative record, the parties' completed briefing, and is fully

informed.  For the reasons discussed below, the Court **GRANTS** Defendant's

Motion for Summary Judgment, ECF No. 22, and **DENIES** Plaintiff's Motion for

Summary Judgment, ECF No. 19.

## JURISDICTION

Plaintiff Anne T.[2] protectively filed an application for Social Security

Disability Insurance (SSDI) on June 12, 2013, Tr. 89, alleging an onset date of

June 20, 2012, Tr. 202, due to rheumatoid arthritis, Reynaud's disease, interstitial

cystitis, gastroparesis, fibromyalgia, osteoarthritis of the left hip and left knee,

urgency stress incontinence, restless leg syndrome, neuropathy in the left leg, and

migraines, Tr. 244.  Plaintiff's application was denied initially, Tr. 124-30, and

upon reconsideration, Tr. 132-36.  A hearing before Administrative Law Judge

Larry Kennedy ("ALJ") was conducted on September 25, 2015.  Tr. 45-88.

Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ also

took the testimony of vocational expert Trevor Duncan.  *Id*.  The ALJ denied

benefits on March 28, 2016.  Tr. 21-36.  The Appeals Council denied review on

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's

first name and last initial, and, subsequently, Plaintiff's first name only, throughout

this decision.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 2

May 10, 2017.  Tr. 1-6.  Plaintiff requested judicial review of the ALJ decision by this Court on July 5, 2017.  Tr. 997.  On October 9, 2018, this Court remanded the case back to the Commissioner for additional proceedings.  Tr. 998, 1001-28.  On November 16, 2018, the Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ.  Tr. 1057.

Plaintiff filed a subsequent claim for DIB on July 14, 2017, alleging an onset date of May 25, 2016.  Tr. 1103.  This application was denied initially and on reconsideration.  Tr. 1081, 1099, 1103.  Plaintiff filed a request for a hearing on July 16, 2018.  Tr. 1103.  When the initial application was remanded back to the Commissioner, the Appeals Council ordered that the two applications be consolidated.  Tr. 1057.  Therefore, Plaintiff's request for a hearing in the subsequent application was dismissed, and the cases were consolidated.  Tr. 1103.

A hearing on the consolidated claims was held on January 30, 2020, by ALJ Timothy Mangrum.  Tr. 977-95.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ also took the testimony of vocational expert, Kimberly Mullinax.  *Id*.  The ALJ issued an unfavorable decision on March 18, 2020.  Tr. 943-66.  The Appeals Council did not act during the prescribed period set forth in 20 C.F.R. § 404.984.  Therefore, the ALJ's decision became the final decision of the Commissioner.  The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g).  ECF No. 1.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 42 years old at the alleged onset date. Tr. 202. She completed two years of college in 2006. Tr. 245. Plaintiff worked as medical assistant, a stage tech, and a substitute para educator. Tr. 246. At application, she stated that she stopped working on January 31, 2013, because of her conditions, but made changes to her work activity due to her conditions as early as December 1, 2012. Tr. 245.

On June 27, 2013, Plaintiff was found to be 50% disabled through the Department of Veteran's Affairs (VA) as of September 1, 2012. Tr. 221-33. This represented a 10% increase from her previous VA determination. Tr. 222. The VA determination assigned a rating of 20% for Plaintiff's left knee impairment, 20% for her left femur impairment, and 10% for her right hip strain. *Id*.

In the October 9, 2018, Order from this Court remanding the case for additional proceedings, the undersigned found that the ALJ erred in his treatment of Plaintiff's VA disability rating, Plaintiff's symptom statements, and Plaintiff's husband's statements. Tr. 1027. Based on these insufficiencies, the undersigned also found that the ALJ's treatment of Dr. Rue's opinion was called into question and instructed the ALJ to reconsider the evidence and conduct a new sequential

1   evaluation.  *Id.*

2        Following the Order, Plaintiff underwent an additional consultative

3   evaluation at the request of Social Security performed by Dr. Drenguis on

4   December 8, 2017.  Tr. 1389-94.  She also had a new evaluation completed by the

5   VA regarding her disability and whether it was service connected on May 8, 2018.

6   Tr. 2068-2105.

7        Plaintiff's insured status for SSDI expired on March 31, 2018.  Tr. 1169.

8   Therefore, she must establish disability on or before March 31, 2018, to be eligible

9   for benefits.  20 C.F.R. § 404.131.

10                      **STANDARD OF REVIEW**

11       A district court's review of a final decision of the Commissioner of Social

12  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

13  limited; the Commissioner's decision will be disturbed "only if it is not supported

14  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

15  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

16  reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159

17  (quotation and citation omitted).  Stated differently, substantial evidence equates to

18  "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

19  citation omitted).  In determining whether the standard has been satisfied, a

20  reviewing court must consider the entire record as a whole rather than searching

21  for supporting evidence in isolation.  *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 5

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

1  determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

2  404.5120(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's

3  work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

4  "substantial gainful activity," the Commissioner must find that the claimant is not

5  disabled. 20 C.F.R. § 404.1520(b).

6      If the claimant is not engaged in substantial gainful activity, the analysis

7  proceeds to step two. At this step, the Commissioner considers the severity of the

8  claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers

9  from "any impairment or combination of impairments which significantly limits

10 [his or her] physical or mental ability to do basic work activities," the analysis

11 proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment

12 does not satisfy this severity threshold, however, the Commissioner must find that

13 the claimant is not disabled. 20 C.F.R. § 404.1520(c).

14     At step three, the Commissioner compares the claimant's impairment to

15 severe impairments recognized by the Commissioner to be so severe as to preclude

16 a person from engaging in substantial gainful activity. 20 C.F.R. §

17 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the

18 enumerated impairments, the Commissioner must find the claimant disabled and

19 award benefits. 20 C.F.R. § 404.1520(d).

20     If the severity of the claimant's impairment does not meet or exceed the

21

severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date, June 30, 2012, through the date last insured, March 31, 2018.  Tr. 945.  At step two, the ALJ found that Plaintiff had the following severe impairments through the date last insured: obesity; fibromyalgia; interstitial cystitis; knee degenerative joint disease; hip osteoarthritis/degenerative joint disease; Raynaud's disease; affective disorder; anxiety disorder vs. posttraumatic stress disorder (PTSD); and somatoform/pain disorder.  Tr. 945.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equaled the severity of a listed impairment through the date last insured.  Tr. 946.  The ALJ then found that Plaintiff had the RFC to perform light work as defined in 20 CFR § 404.1567(a) with the following limitations through the date last insured:

> she could stand and/or walk for about 2 hours in an eight-hour workday
> and she could use a medically required hand held assistive device for
> ambulation.  She could frequently reach.  She could occasionally
> balance, stoop, kneel, and crouch.  She could not crawl or climb ladders,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9

ropes, scaffolds, ramps, or stairs.  She needed to avoid concentrated exposure to extreme cold and heat, humidity, vibration, pulmonary irritants, and hazards.  She could not to operate [sic] motorized vehicles.  She could work in very quiet to moderate noise intensity level as those terms are clamed [sic] in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO).  She could do work that needs little or no judgment and she could perform simple duties that could be learned on the job in a short period.  She required a work environment with minimal supervisor contact (i.e. Minimal did not preclude all contact, rather it means that contact did not occur regularly; and minimal contact also did not preclude simple and superficial exchanges or being in proximity to the supervisor).  She could work in proximity to coworkers but not in a cooperative or team effort.  She required a work environment that had no more than superficial interactions with coworkers.  She required a work environment that was predictable and with few work setting changes.  She required a work environment without public contact.

Tr. 948.

At step four, the ALJ identified Plaintiff's past relevant work as a medical assistant, stage technician, and teacher's aide and found that she could no longer perform this past relevant work.  Tr. 965.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: document preparer; circuit board assembly; and toy stuffer.  Tr. 965-66.  On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from June 30, 2012, the alleged date of onset, through March 31, 2018, the date last insured.  Tr. 966.

/ / /

/ / /

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her SSDI under Title II of the Social Security Act.  ECF No. 19.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ made a proper step two determination;

2.  Whether the ALJ properly addressed Plaintiff's symptom statements; and

3.  Whether the ALJ properly addressed the medical opinions.

**DISCUSSION**

**1.    Step Two**

Plaintiff challenges the ALJ's step two determination by asserting that he failed to find her migraines severe.  ECF No. 19 at 4-6.

To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment.  20 C.F.R. § 404.1521.  "[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments and their symptoms affect his ability to perform basic work activities."  *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).  At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairment(s) and that such

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1  impairments(s) are severe. *Tackett*, 180 F.3d at 1098-99 (In steps one through

2  four, the burden of proof rests upon the claimant to establish a prima facie case of

3  entitlement to disability benefits.).

4      The step-two analysis is "a de minimis screening device used to dispose of

5  groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  An

6  impairment is "not severe" if it does not "significantly limit" the ability to conduct

7  "basic work activities."  20 C.F.R. § 404.1522(a).  Basic work activities are

8  "abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1522(b).

9      The ALJ identified Plaintiff's severe impairments as obesity, fibromyalgia,

10  interstitial cystitis, knee degenerative joint disease, hip osteoarthritis/degenerative

11  joint disease, Raynaud's disease, affective disorder, anxiety disorder vs. PTSD, and

12  somatoform/pain disorder.  Tr. 945.  The ALJ adopted the step two determination

13  from the previous ALJ decision finding her headaches were nonsevere.  Tr. 946.

14  Plaintiff asserts that her migraines had worsened since the 2016 ALJ decision and

15  the ALJ's failure to consider this worsening at step two was an error.  ECF No. 19

16  at 4-6.

17      First, the Court notes that the 2018 Order of this Court remanded the case

18  with instructions for the ALJ to "conduct a new sequential evaluation."  Tr. 1027.

19  Therefore, the law of the case doctrine or the rule of mandate do not prevent the

20  ALJ from addressing step two on remand.  *See Stacy v. Colvin*, 825 F.3d 563, 566

21

1    (9th Cir. 2016) (finding that the law of the case doctrine and the rule of mandate

2    apply in Social Security cases).

3        Second, substantial evidence supports the ALJ's step two determination.

4    The ALJ's determination adopted the 2016 ALJ's decision, which stated the

5    following:

6        "There is no indication that her . . . headaches (see 13F/17 and 24F/75
         (indicating that she was not having headaches) and 54F/80 (relating that
7        her migraine frequency had diminished and that she was not having
         issues with lightheadedness)) . . . have had a significant functional
8        impact for any continuous or expected 12-month period."

9    Tr. 946.  The evidence cited by the ALJ supports his determination.  On October

10   10, 2013, Plaintiff denied having a severe headache or blurred vision.  Tr. 556.  On

11   April 8, 2014, Plaintiff reported that her migraine frequency was diminished while

12   taking nifedipine and that she was not having any issues with lightheadedness.  Tr.

13   834-35.  On January 13, 2015, Plaintiff again denied headaches.  Tr. 830.

14       Plaintiff argues that her migraines have worsened since the last ALJ hearing,

15   and should now be found to be severe.  ECF No. 19 at 4-6.  However, the evidence

16   demonstrates that this worsening occurred after the date last insured, March 31,

17   2018.  Plaintiff provided ten citations to the record in support of her assertion that

18   her headaches have worsened.  *Id*.  However, only two were prior to Plaintiff's

19   date last insured: (1) on August 11, 2017, Plaintiff reported that while she had not

20   had problems with her migraines in a while, the prior three weeks she had been

21   experiencing daily migraines, and she was started on Propranolol, Tr. 1365; and (2)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 13

on September 13, 2017, Plaintiff was experiencing a migraine when she attended

an appointment, Tr. 2472.  However, subsequent records from the same provider

show no continued complaints of migraines prior to the date last insured, March

31, 2018.  Tr. 2463-71.

The remaining evidence cited by the ALJ demonstrates a worsening of

headaches after the date last insured.  On May 30, 2018, Plaintiff presented at the

emergency room with a migraine that had been present for three days.  Tr. 2633.

However, Plaintiff told the provider that this migraine was different compared with

previous episodes.  Tr. 2634.  Likewise, on September 25, 2018, Plaintiff reported

an increase in headaches and migraines to her eye doctor.  Tr. 2251.  On October

12, 2018, Plaintiff reported having headaches at the rate of one a week.  Tr. 2042.

She stated that she had been having migraines "for many years since teenager.

[Plaintiff] was well controlled [on] propranolol but now having [headache] once a

week."  *Id*.  It is significant that in her appointments and contact with the VA in

just prior to her reports of weekly headaches in October of 2018, Plaintiff did not

report migraines or headaches as an issue.  Tr. 2059-67.  While Plaintiff insists that

her migraines have worsened, they appear to have worsened after the date last

insured, March 31, 2018.  Therefore, the ALJ's determination that Plaintiff's

headaches were not severe through the date last insured, Tr. 945-46, is supported

by substantial evidence and will not be disturbed.

Additionally, the Ninth Circuit has recently reiterated its holding that step two is a screening tool:

> Step two is merely a threshold determination meant to screen out weak claims. *Bowen v. Yuckert*, 482 U.S. 137, 146-47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). Here, step two was decided in Plaintiff's favor. Tr. 945. Additionally, Plaintiff failed to allege any limitations that were omitted in the RFC because her migraines were considered nonsevere. ECF No. 19 at 4-6. Therefore, Plaintiff could not have been prejudiced as any alleged error would be harmless and could not be a basis for remand. *Buck*, 869 F.3d 1049.

## 2.    Plaintiff's Symptom Statements

Plaintiff argues that the ALJ erred in his treatment of her symptom statements. ECF No. 19 at 6-12.

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

1   symptoms alleged." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "The

2   claimant is not required to show that his impairment could reasonably be expected

3   to cause the severity of the symptom he has alleged; he need only show that it

4   could reasonably have caused some degree of the symptom." *Id*.

5       Second, "[i]f the claimant meets the first test and there is no evidence of

6   malingering, the ALJ can only reject the claimant's testimony about the severity of

7   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

8   rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

9   citations and quotations omitted).

10      The ALJ stated that Plaintiff's "statements concerning the intensity,

11  persistence and limiting effects of these symptoms are not entirely consistent with

12  the medical evidence and other evidence in the record for the reasons explained in

13  this decision." Tr. 950.

14      First, the ALJ reproduced the credibility determination from the 2016 ALJ

15  decision in full and adopted the evaluation of Plaintiff's symptom statements from

16  the 2016 ALJ decision, stating that "[t]o the extent not inconsistent with the court's

17  remand order, I adopt the above analysis from the 2016 decision related to the

18  evaluation of the claimant's allegations about the severity of her impairments." Tr.

19  950-54. The Order from this Court stated that "the ALJ's determination that

20  Plaintiff's symptom complaints are less than fully credible is not legally sufficient.

21  The matter must be remanded for reconsideration of Plaintiff's symptom

complaints in addition to other errors and insufficiencies discussed through this decision." Tr. 1025. Because this Court previously found that this portion of the 2016 ALJ's decision was not legally sufficient, the current ALJ cannot rely on the same analysis a second time and this Court will not address its legal sufficiency a second time. *See Stacy*, 825 F.3d at 567 ("The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case.").

The ALJ then provided additional analysis in support of rejecting the Plaintiff's symptom statements. Tr. 954-55. The ALJ set forth a bulleted list finding a specific allegation inconsistent with a specific portion of the record: (1) Plaintiff's allegations of diffuse pain was inconsistent with providers' observations; (2) Plaintiff's complaints of chronic fatigue/exhaustion was inconsistent with providers' observations and the fact that she could drive; (3) Plaintiff's allegations of limited standing/walking were inconsistent with the lack of assistive device to assist with ambulation and providers' observations of normal gait; (4) Plaintiff's allegations of weakness and limited mobility were inconsistent with a good range of motion and normal strength; (5) Plaintiff's alleged limited lifestyle was inconsistent with a lack of atrophy on examinations; (6) Plaintiff's alleged hand problems were inconsistent with the lack of complaints before the date last insured; (7) Plaintiff's mental health symptoms appear largely situational; (8) Plaintiff's alleged depression is inconsistent with her regularly denied

depression; (9) Plaintiff's allegations of depression and anxiety were inconsistent with providers' opinions that she was in no acute distress, she was cooperative/pleasant, she had normal mood/affect, and was fully alert; and (10) Plaintiff's allegations were inconsistent with normal performance on a formal mental status examinations.  Tr. 954-56.

The ALJ's first and ninth reasons for rejecting Plaintiff's symptom statements, that she appeared in no acute distress, is not specific, clear and convincing.  An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).  However, district courts have questioned the applicability of the generic chart note of "acute distress" to chronic conditions such as Plaintiff's.  *See Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. April 21, 2020) *citing, Mitchell v. Saul*, No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb. 13, 2020) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute' distress do not distract from the findings regarding Plaintiff's chronic conditions."); *Richard F. v. Comm'r of Soc. Sec.*, No. C19-5220 JCC, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony.  'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011).  Plaintiff's impairments are chronic, not

acute."). Therefore, the generic chart note of "no distress" is not a specific, clear and convincing reason to discount Plaintiff's symptom testimony.

The ALJ's second, third, fourth, and tenth reasons all address how Plaintiff's symptom statements were inconsistent with objective evidence. Tr. 954-56. These inconsistencies meet the specific, clear and convincing standard. *See Bray*, 554 F.3d at 1227. Plaintiff's statements that she had no energy and spent nearly all day in bed, Tr. 308 ("I sleep or rest most of the day, too much pain to move around, stand, sit, use arms"), Tr. 310 (stating she does not do housework because she has no energy), Tr. 325 ("The claimant may clean for a total of 30 minutes a day before becoming too tired to day anything else during the remainder of the day" and "She enjoys reading since she spends nearly all day resting."), Tr. 988 ("And it's normal for me to be up two to three hours maybe, and the rest of the time I'm down."), are inconsistent with her providers' statements that she was alert and fully oriented during examinations. When Plaintiff presented to Dr. Kim for refills of her narcotic medications, he did not observe fatigue, he found her to be alert, Plaintiff denied sedation as a side effect of her medication, and Plaintiff denied any driving impairment. Tr. 1317, 1321, 1323, 1326, 1329, 1332-33, 1341-42, 1344-45, 1352-53, 2463, 2466, 2469, 2472, 2476. The Court notes that the ALJ cited some of these records as being in Exhibit 30F, Tr. 594, but Dr. Kim's records were contained in Exhibit 31F. This amounts to a Scribner's error. Therefore, this second reason is supported by substantial evidence and meets the specific, clear

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

1   and convincing standard.

2       Likewise, Plaintiff's statements that she could only stand/walk for a few

3   minutes, Tr. 73 (stating that without her cane, Plaintiff would fall), Tr. 292 ("Now

4   the claimant cannot stand more than 10 minutes."), Tr. 306 ("can't stand or sit for

5   more than 10 mins"), Tr. 312 ( "I can walk across the street [and] have to rest"), is

6   inconsistent an observation of a normal gait, Tr. 851, 1815, 2147.  Plaintiff asserts

7   that there are more findings of abnormal gait than normal gait.  ECF No. 19 at 11.

8   However, if the evidence is susceptible to more than one rational interpretation, the

9   Court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at

10  1097.  Therefore, this reason meets the specific, clear and convincing standard.

11      Plaintiff's statements of weakness and limited mobility, Tr. 321 ("Now the

12  claimant cannot lift her leg onto a step or a stair without bracing herself on

13  something else for support"), are inconsistent with findings that she retained

14  normal strength in her extremities and she had a good range of motion, Tr. 589,

15  851, 1392-93.  These records do reveal a limited range of motion in the hips, Tr.

16  589, 1393, but the examiner stated that she did not require an assistance device and

17  did not find that this limited range of motion precluded Plaintiff from climbing

18  steps, Tr. 590, 1394.  Therefore, this fourth reason is supported by substantial

19  evidence and meets the specific, clear and convincing standard.

20      The ALJ also stated that Plaintiff's "allegations are inconsistent with the

21  normal performance on formal mental status examinations, which show intact

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 20

cognitive functioning." Tr. 956. However, the ALJ failed to state what allegations

were inconsistent with these normal performances. "General findings are

insufficient; rather, the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints. *Reddick v. Chater*, 157 F.3d 715,

722 (9th Cir. 1998). Therefore, this tenth reason is not specific, clear and

convincing.

The ALJ's fifth reason for rejecting Plaintiff's symptom statements, that

Plaintiff's alleged limited lifestyle was inconsistent with a lack of atrophy on

examinations, is not specific, clear and convincing. The ALJ's finding that a

"severely limited lifestyle" was inconsistent with a lack of atrophy is too general.

A claimant could have a "severely limited lifestyle" for reasons other than atrophy,

and Plaintiff alleges more than just atrophy is limiting her functional abilities.

Therefore, this reason is not specific, clear and convincing. *See Reddick*, 157 F.3d

at 722 (general findings are insufficient to reject a Plaintiff's testimony).

The ALJ's sixth, seventh, and eighth reasons for rejecting Plaintiff's

symptom statements went unchallenged by Plaintiff. ECF No. 19 at 6-12. This

failure results in a waiver of the issues. *See Carmickle v. Comm'r, Soc. Sec.

Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). The Ninth Circuit explained the

necessity for providing specific argument:

> The art of advocacy is not one of mystery. Our adversarial system relies
> on the advocates to inform the discussion and raise the issues to the
> court. Particularly on appeal, we have held firm against considering
> arguments that are not briefed. But the term "brief" in the appellate

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 21

context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so. It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).[3]

Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to provide adequate briefing, the Court declines to consider the issues.

Here, some of the reasons provided by the ALJ for rejecting Plaintiff's symptom statements fails to meet the specific, clear and convincing standard. However, several do meet this standard. Therefore, any error that may result from the ALJ's failure to meet the specific, clear and convincing standard would be harmless. *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197

---

[3]Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

(9th Cir. 2004) (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

### 3. Medical Opinions

Plaintiff challenges the ALJ's treatment of the opinions from Katrina Rue, D.O., William Drenguis, M.D., and the VA examiner. ECF No. 19 at 12-20.

The Ninth Circuit repeatedly has held that there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id*.

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and

legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A.    Katrina Rue, D.O.

On January 18, 2014, Dr. Rue completed a Medical Report form.  Tr. 597-99.  She opined that if Plaintiff worked on a regular and continuous basis, she would anticipate her condition to deteriorate, stating that she is "unable to tolerate activity [and] pressure or moving physically or emotional stress worsens with daily functioning."  Tr. 598.  She opined that if Plaintiff were working 40-hours a week, she would expect her to miss four or more days per month, stating that she would "likely miss 1 week at a time, simple outings to the clinic/appts lay her out for a day or two."  *Id*.  She opined that Plaintiff was severely limited, defined as "[u]nable to lift at least 2 pounds or unable to stand and/or walk.  *Id*.  She stated that these limitations were present starting in October of 2011.  Tr. 599.

On July 16, 2014, Dr. Rue completed a Medical Report form.  Tr. 682-83.  She opined that Plaintiff would have to lie down for two to sixteen hours a day due

1    to pain and fatigue.  Tr. 682.  She stated that Plaintiff's prognosis was fair/poor.

2    Tr. 683.  She opined that work on a regular and continuous basis would cause

3    Plaintiff's condition to deteriorate, stating she "just wasn't able to work full or part

4    time – had to quit due to inability to do her job functions."  *Id*.  She opined that if

5    Plaintiff were working, she would likely miss four or more days per month, stating

6    that she "often out of duty for 1-2 days at a time, [less than] 4 [hours] several days

7    per week."  *Id*.  She confirmed that she had administered a tender point exam with

8    at least 11 of 18 tender points.  *Id*.  She opined that these limitations were present

9    since November of 2011.  *Id*.

10           The ALJ assigned little weight to Dr. Rue's opinions.  Tr. 957-61.  First, the

11    ALJ copy and pasted the 2016 ALJ's determination addressing Dr. Rue's opinion.

12    Tr. 958.  This Court's Order remanding the case back the Commissioner found that

13    the prior ALJ's treatment of Dr. Rue's opinions was called into question and

14    instructed the ALJ to reconsider the opinion on remand.  Tr. 1014-19.  Therefore,

15    this Court cannot now rely on the 2016 ALJ's analysis of the opinions.  *See Stacy*,

16    825 F.3d at 567 ("The law of the case doctrine generally prohibits a court from

17    considering an issue that has already been decided by that same court or a higher

18    court in the same case.").

19           In addition to copying the 2016 ALJ's decision regarding Dr. Rue's

20    opinions, the ALJ found that Dr. Rue's opinions were not persuasive for four

21    reasons: (1) Dr. Rue relied more heavily on Plaintiff's self-reports; (2) several

opined limitations were not supported by longitudinal examination findings; (3)

Dr. Rue did not complete her own fibromyalgia examination; and (4) Dr. Rue did

not review the VA treatment records.  Tr. 960-61.

First, whether or not an opinion is persuasive is the incorrect standard to be

applied to Dr. Rue's opinions.  For claims filed on or after March 27, 2017, new

regulations apply that change the framework for how an ALJ must weigh medical

opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical

Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. §

404.1520c.  The new regulations provide that the ALJ will no longer give any

specific evidentiary weight to medical opinions or prior administrative medical

findings, including those from treating medical sources.  20 C.F.R. § 404.1520c(a).

Instead, the ALJ will consider the persuasiveness of each medical opinion and

prior administrative medical finding, regardless of whether the medical source is

an Acceptable Medical Source.  20 C.F.R. § 404.1520c(c).  However, this case was

filed prior to March 27, 2017.  Therefore, the ALJ used the incorrect standard

when addressing the opinion in his decision.  However, any error for applying the

incorrect standard of persuasiveness instead of weighing the opinions is harmless

because at least one of the reasons the ALJ provided for not adopting the opinion

met the specific and legitimate standard.  *See Tommasetti*, 533 F.3d at 1038 (An

error is harmless when "it is clear from the record that the . . . error was

inconsequential to the ultimate nondisability determination.").

The ALJ's first reason for not adopting the opinions, that Dr. Rue relied more heavily on Plaintiff's self-reports, is specific and legitimate. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss*, 427 F.3d at 1217; *Tommasetti*, 533 F.3d at 1041. But the ALJ must provide the basis for his conclusion that the opinion was based on a claimant's self-reports. *Ghanim*, 763 F.3d at 1162. Here, the ALJ concluded that "Dr. Rue's statements were very similar to the claimant's reported issues," and relied on the example that Plaintiff must lie down for long periods, could hardly get up, and could only stand for 15 minutes. Tr. 961. On January 10, 2014, Plaintiff told Dr. Rue that she is in bed for days after spending the day out, that she only got up to urinate, and that she could only stand for 15 minutes at a time due to pain. Tr. 600. These same limitations appear on the January 18, 2014, and the July 16, 2014, Medical Report forms. Tr. 597 (stating that Plaintiff must lie down during the day for "hours at a time every day due to pain [and] exhaustion. Worse after any sort of activity or outing. Sometimes in bed [for] 2 days."); Tr. 682 (stating Plaintiff must lie down during the day for 2-16 hours). The ALJ also found that "[v]ery little information beyond the claimant's self-reports was documented in the correlating treatment notes that would support the severe limitations indicated, as Dr. Rue's own examination results were largely normal." Tr. 961. The ALJ then cited the January 10, 2014, treatment notes. *Id*. These notes show a normal physical examination except that Plaintiff appeared uncomfortable and had

swelling in the lower extremities.  Tr. 601.

Additionally, the ALJ found it concerning that Plaintiff appeared to mislead Dr. Drenguis in his December 8, 2017, consultative evaluation, and this "underscores her allegations to Dr. Rue." Tr. 961.  On December 8, 2017, Dr. Drenguis completed a consultative evaluation and noted four inconsistences: (1) in the waiting room, Plaintiff was noted to arise from the chair without using her arms, but during the interview she was unable to do so and used both arms to push on the tabletop to rise; (2) when walking into the exam room her gait was moderately antalgic favoring her left leg, but during formal testing her gait was markedly antalgic favoring her left leg; (3) during the tender point testing it was impossible to find a negative control point, and Plaintiff even exhibited a marked pain response when pushing on the center of her forehead; and (4) during formal range of motion testing Plaintiff could not flex her left hip greater than 45 degrees, but in the waiting room and during the interview she sat with her left hip flexed to 90 degrees without complaint.  Tr. 1392.  The ALJ further found that Plaintiff's receipt of unemployment benefits as a "willingness to provide inaccurate information in order to achieve a desired result," and this "underscores her allegations to Dr. Rue." Tr. 691.  Here, the ALJ provided multiple bases for his conclusion that the opinion was weighted more heavily on Plaintiff's self-reports than the objective evidence.  Therefore, this reason meets the specific and legitimate standard.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 28

1    The ALJ's second reason for rejecting Dr. Rue's opinions, that it was not

2  consistent with the longitudinal examination findings, is not specific and

3  legitimate.  Inconsistency with the majority of objective evidence is a specific and

4  legitimate reason for rejecting physician's opinions.  *Batson*, 359 F.3d at 1195 (9th

5  Cir. 2004).  Here, the ALJ found that "[s]evere limitations are not supported by

6  longitudinal examination findings showing 5/5 motor strength/intact sensation as

7  well as good range of motion in her extremities, which I discuss in detail above in

8  relation to the claimant's allegations."  Tr. 960.  Plaintiff's examinations findings

9  demonstrate consistently good range of motion and normal strength prior to the

10  date last insured.  *See supra*.  However, Dr. Rue's opinions address Plaintiff's

11  abilities to sustain work activity by stating she would be required to take additional

12  rests and would miss work in excess of 4 days a week.  Without more explanation,

13  it is unclear how normal strength and range of motion testing would be inconsistent

14  with the opinion.  Therefore, this does not meet the specific and legitimate

15  standard.

16    The ALJ's third reason for rejecting Dr. Rue's opinions, that she did not

17  complete her own fibromyalgia examination, is not supported by substantial

18  evidence.  While no testing appears within the treatment notes, Dr. Rue stated on

19  the July 16, 2014, Medical Report form that she had administered the tender point

20  exam, and Plaintiff had at least 11 of the 18 tender points.  Tr. 683.  Therefore, the

21  ALJ cannot rely on the lack of a tender point exam in rejecting Dr. Rue's opinions.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 29

1    The ALJ's fourth reason for rejecting Dr. Rue's opinions, that she did not

2 have the VA treatment notes, is not specific and legitimate.  A provider's

3 familiarity with the treatment history is a factor to consider when weighing

4 opinions.  20 C.F.R. § 404.1527(c)(6).  Here, the ALJ cited evidence in the record,

5 including rheumatology evaluation, that Dr. Rue did not review prior to her

6 opinions.  Tr. 961.  The ALJ's finding was based on the premise that these

7 unreviewed records would undermine the opinion's validity by undermining

8 Plaintiff's diagnosis of fibromyalgia.  *Id*. ("Dr. Rue presumable accepted that

9 diagnosis [of fibromyalgia] and then accepted the claimant's self-reported

10 issues.").  However, it is unclear how the VA records undermined the diagnosis of

11 fibromyalgia because they included a negative Rheumatoid factor and a negative

12 ANA test.  Tr. 512.  This actually supports the diagnosis of fibromyalgia because

13 the diagnostic criteria requires that other conditions that could cause the alleged

14 symptoms be ruled-out.  *See* S.S.R. 12-2p.  The ALJ also cited Dr. Drenguis'

15 evaluation, but this was not associated with the VA records, so it does not support

16 the ALJ's rationale of rejecting the opinion because Dr. Rue did not have the VA

17 records.  Therefore, the ALJ's fourth reason does not meet the specific and

18 legitimate standard.

19    Here, one of the ALJ's reasons for rejecting the opinion rises to the level of

20 specific and legitimate.  Therefore, the Court will not disturb the ALJ's treatment

21 of Dr. Rue's opinions.  *See Tommasetti*, 533 F.3d at 1038 (An error is harmless

1    when "it is clear from the record that the . . . error was inconsequential to the

2    ultimate nondisability determination.").

3        **B.    William Drenguis, M.D.**

4        On November 6, 2013, Dr. Drenguis completed a Consultative Evaluation.

5    Tr. 586-94.  He diagnosed Plaintiff with chronic pain syndrome, left hip pain,

6    diffuse arthralgias, and obesity.  Tr. 590.  He opined that Plaintiff was limited to

7    four hours of standing/walking, five hours of sitting, occasional lifting/carrying 20

8    pounds, and frequently lifting/carrying 10 pounds.  *Id*.  He limited her to frequent

9    balancing and occasional climbing, stooping, kneeling, crouching, and crawling.

10   *Id*.  He limited her to occasional reaching handling, fingering and feeling.  *Id*.  He

11   opined that she should have no limitations to environmental activities.  Tr. 591.

12   The 2016 ALJ decision gave this opinion some weight and rejected Dr. Drenguis'

13   limitation to occasional reaching, handling, fingering, and feeling.  Tr. 31.

14   Plaintiff did not challenge this in her request for judicial review by this Court.  Tr.

15   1001-28.

16       On December 8, 2017, Dr. Drenguis completed a second consultative

17   evaluation.  Tr. 1389-94.  He diagnosed Plaintiff with fibromyalgia, left knee

18   internal derangement, and left hip internal derangement.  Tr. 1394.  He limited

19   Plaintiff to two hours of standing/walking, six hours of sitting, occasional

20   lifting/carrying 20 pounds, and frequent lifting/carrying 10 pounds.  *Id*.  He further

21   limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching,

1   and crawling. *Id*. He limited Plaintiff's manipulative activities to only occasional

2   reaching and frequent handling, fingering, and feeling, stating "[s]he is limited by

3   fibromyalgia of her shoulders." *Id*. He limited her environmental activities to "the

4   claimant is limited working at heights." *Id*.

5         In the current ALJ decision, the ALJ copy and pasted the 2016 ALJ decision

6   discussing Dr. Drenguis' 2013 opinion including the rejection of the opined

7   manipulative limitations, Tr. 956, and adopted the ALJ's treatment of the opinion,

8   Tr. 960. The ALJ then addressed Dr. Drenguis' 2017 opinion finding it was

9   consistent with the RFC determination, but also rejected the opined manipulative

10   limitations. Tr. 963.

11         First, the ALJ rejected the opined manipulation limitations because they

12   were not supported by the objective findings. Tr. 956, 963. This meets the

13   specific and legitimate standard. On exam, Plaintiff's upper extremities were

14   essentially normal. Tr. 1392-93. Her range of motion was normal in the

15   shoulders, elbows, wrists, and fingers. Tr. 1393. Her strength was 5/5 and

16   bilaterally symmetrical in the upper extremities including her grip. Tr. 1392. Her

17   muscle bulk and tone were normal and symmetric. *Id*. Her sensory exam was

18   intact to pin prick and light touch in both hands. Tr. 1393. The only abnormality

19   was her deep tender reflexes, where were 1+/2 bilaterally and symmetric in her

20   biceps, but she also scored 1+/2 in her brachial radialis, patella, and Achilles

21   tendons. *Id*. Therefore, the ALJ's determination that a manipulation limitation

was not supported by the objective evidence is supported by substantial evidence and meets the specific and legitimate standard.

Second, the ALJ rejected the opined manipulation limitations because Plaintiff appeared to be attempting to portray herself as more limited than she actually was. Tr. 963. This meets the specific and legitimate standard. A claimant's attempt to mislead a provider calls the opinion into question and meets the specific and legitimate standard for rejecting that opinion. *See Chaudhry v. Astrue*, 688 F.3d 661, 667 (9th Cir. 2012) (the claimant's use of an unprescribed wheelchair can be deemed to influence a provider's opinion and lead to a "mistaken impression"). As discussed above, Dr. Drenguis noted four inconsistencies in Plaintiff's presentation. Tr. 1392. These four inconsistencies support the ALJ's conclusion that Plaintiff was attempting to portray herself as more limited than she actually was. Therefore, the ALJ's reason is supported by substantial evidence and meets the specific and legitimate standard. The Court will not disturb the ALJ's treatment of Dr. Drenguis' opinions.

## C.    VA Evaluation

On April 30, 2018, Carol Flaugher, PA-C completed a Disability Benefits Questionnaire regarding Plaintiff's thoracolumbar spine. Tr. 2068-77. She stated that Plaintiff had been diagnosed with a lumbar sprain in 2016. Tr. 2069. She stated that Plaintiff reported that she could not do any twisting movements, she was limited in bending, and she was limited to lifting less than 10 pounds. Tr.

2070.  Upon testing, Ms. Flaugher found that Plaintiff had a limited range of

motion and opined that Plaintiff had functional loss identical to those she reported.

Tr. 2070.  Ms. Flaugher then completed additional testing including strength

testing, strait leg raising tests, neurological tests, and deep tendon reflex testing.

Tr. 2072-74.  She opined that Plaintiff's back condition would impact her ability to

work and provided a functional opinion verbatim to what Plaintiff had reported

initially regarding her limitations.  Tr. 2076-77.

On the same day, Ms. Flaugher completed a Disability Benefits

Questionnaire regarding Plaintiff's hip and thigh conditions.  Tr. 2077-88.  When

asked to document Plaintiff's description of her functional loss, she stated

"walking [was] limited to 100 feet for both hips and left [k]nee and cannot separate

without speculation.  Cannot run/jog.  Standing limited to [less than] 10 minutes."

Tr. 2078-79.  She then completed a physical exam showing that Plaintiff had

limited range of motion in the hips bilaterally.  Tr. 2079-80.  Ms. Flaugher opined

that Plaintiff could not squat or kneel, walking was limited to less than 100 feet,

and standing was limited to less than 10 minutes.  Tr. 2082.

Ms. Flaugher then completed a Disability Benefits Questionnaire regarding

Plaintiff's knee and lower leg conditions.  Tr. 2088-2101.  When asked to

document Plaintiff's description of her functional loss, she stated that she "cannot

squat or keel.  Walking limited to [less than] 100 feet same as the hip.  Standing

limited to [less than] 10 minutes same as left hip."  Tr. 2090.  Following a physical

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 34

exam, Ms. Flaugher opined that Plaintiff could not squat or kneel, was limited to walking less than 100 feet, limited to standing less than 10 minutes, cannot drive except for very short distances, must get out of a car every 45 minutes to stretch her knee, and cannot do any stairs up or down. Tr. 2101. She additionally stated that Plaintiff falls down one to two times a month due to her knee. *Id*.

Ms. Flaugher then completed a Disability Benefits Questionnaire regarding Plaintiff's fibromyalgia. Tr. 2102-04. Upon examination, she stated that Plaintiff had reported tenderness on all the trigger points bilaterally. Tr. 2103-04. Ms. Flaugher then completed a Disability Benefits Questionnaire regarding her medical opinion. Tr. 2104-16. She opined that most likely Plaintiff's post service diagnosis of fibromyalgia and mixed connective tissue disease had aggravated her service connection conditions beyond normal. Tr. 2105.

The ALJ rejected the opinions for three reasons: (1) they appeared to significantly consider Plaintiff's self-reported limitations; (2) the evaluation was out of proportion to mostly normal or mild radiographic findings in the lumbar spine, hips, and right knee; and (3) the opinion was completed after the date last insured. Tr. 963.

Plaintiff argues that the ALJ was required to provide persuasive, specific, and valid reasons for rejecting these opinions, citing *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). ECF No. 19 at 21. However, the Court in *McCartey* found that the persuasive, specific, and valid standard applied to VA

disability ratings, 298 F.3d at 1076, and not to the individual opinions behind those ratings.  There is no VA determination letter in the record stating a new rating following Ms. Flaugher's opinion.  Therefore, this is not the review of a VA rating, but the review of Ms. Flaugher's opinion, who is a physician assistant.  Tr. 2105.  Physician assistants are not considered acceptable medical sources for cases filed before March 27, 2017.  20 C.F.R. § 404.1502(a)(8).  In cases filed before March 27, 2017, such as this one, an ALJ must give only "germane" reasons to discount evidence from "other sources," such as a physician assistant.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

These reasons meet the germane standard.  First, Ms. Flaugher repeated Plaintiff's description of limitations either close to the same or verbatim in her medical opinion.  Tr. 2076-77, 2082, 2101.  Second, the imagining reports included with the evaluations show only mild to moderate findings.  Tr. 2076 (x-ray of the lumbar spine showed no significant lumbar spine degenerative disc disease); Tr. 2086 (imaging of the bilateral hips showed an unremarkable right hip and post-surgical changes of the left hip without radiographic evidence of hardware complication); Tr. 2100 (imaging of the bilateral knees showed mild lateral tilt of the patella in the right knee and a moderate medial compartment osteoarthritis with faint chondrocalcinosis at the medial meniscus in the left knee).  Third, the opinion was dated a month after Plaintiff's last insured date.  These reasons are supported by substantial evidence and specific enough to meet the

"germane" standard.  Therefore, the Court will not disturb the ALJ's treatment of the opinion.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment so long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  After review, the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, **ECF No. 22**, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the **Defendant**, and **CLOSE** the file.

**DATED** July 30, 2021.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Court

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 37